IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WEST POINT AUTO & TRUCK CENTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LYNN KLITZ, KIMBERLY B. KLITZ, and EQUIPMENT SERVICES, INC.,<br><br>Defendants. | 8:20CV194<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Lynn Klitz ("Lynn"), Kimberly B. Klitz ("Kimberly"), and Equipment Services, Inc.'s ("ESI" and collectively, "defendants") Motion to Dismiss (Filing No. 14) pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). For the reasons stated below, the motion is denied.

**I.   BACKGROUND**

Lynn and Kimberly owned and operated ESI, a commercial truck, trailer, and equipment maintenance and repair business in West Point, Nebraska. On March 14, 2018, the defendants entered into an Asset Purchase Agreement ("Purchase Agreement") with plaintiff West Point Auto & Truck Center, Inc. ("West Point"). Under that agreement, ESI sold West Point substantially all of ESI's assets, including inventory, tools, equipment, leases, goodwill, customer records and lists, trade secrets, and other intellectual property "as a going concern."[1]

---

[1]As West Point notes in its complaint (Filing No. 1), the Purchase Agreement specifically transferred "[t]he right to use the name 'Equipment Services, Inc.', and all derivatives of said name" to West Point and barred further use of the name by the seller "in any manner and in any location whatsoever." West Point nonetheless named ESI as a

The sale did not include the building where ESI ran the repair shop (the "shop"), so West Point leased the shop for eighteen months while it built a new facility nearby. In October 2019, after that lease expired, the defendants leased the shop to 4S Services, LLC ("4S Services") which, like West Point, offers truck maintenance and repair services.

The Purchase Agreement also included a non-compete provision that prohibited the defendants from competing with West Point within a 200-mile radius of West Point, Nebraska, for five years. The defendants likewise agreed they would not (1) solicit West Point's customers for a certain amount of time, (2) use or disclose any of its newly acquired trade secrets, or (3) disparage West Point or harm the goodwill it purchased.

In conjunction with the sale of the business, Lynn accepted a job as West Point's service manager and signed an open-ended Executive Employment Agreement ("Employment Agreement"). West Point hired Lynn to use his "unique set of skills, abilities, and experiences" to benefit the company and expected him to build and protect its customer relationships and goodwill. Like the Purchase Agreement, the Employment Agreement also included non-compete, non-solicitation, and non-disclosure provisions.

On April 5, 2019, Lynn resigned from his position with West Point. At about that time, three other employees, Brandon Wragge, Shane Madsen ("Madsen"), and Ryan Klitz ("Ryan") left West Point. Madsen and Ryan joined 4S Services. West Point believes Lynn encouraged them to leave in violation of his Employment Agreement. West Point also alleges Lynn misappropriated some of its inventory and confidential trade secrets before he left and improperly diverted customers to 4S Services.

---

defendant in this case, and defense counsel purports to represent ESI. For purposes of this motion, the Court has followed the parties' dubious treatment of ESI.

On May 26, 2020, West Point filed this action, asserting federal-question, diversity, and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1332(a), and 1367. West Point asserts claims against all the defendants for breach of the Purchase Agreement ("Count I"); misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.*, ("Count III"); misappropriation of trade secrets in violation of the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-502 *et seq.*, ("Count IV"); breach of the implied covenant of good faith and fair dealing ("Count VI"); and tortious interference with prospective economic advantage ("Count VII"). West Point also asserted claims against Lynn for breach of the Employment Agreement ("Count II") and conversion ("Count V").

On July 9, 2020, the defendants moved to dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). West Point opposes (Filing No. 18) dismissal on both grounds.

## II. DISCUSSION

### A. Subject-Matter Jurisdiction

West Point asserts claims under both state and federal law. Hedging its bets, West Point alleges federal-question, diversity, and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1332(a), and 1367. As the party asserting subject-matter jurisdiction in federal court, West Point bears the burden of proving jurisdiction is proper. *See, e.g., Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 604 (8th Cir. 2016). The Court will not dismiss for lack of subject-matter jurisdiction lightly. *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996). It will "sparingly and cautiously" dismiss on those grounds. *Bowe v. Nw. Airlines, Inc.*, 974 F.2d 101, 103 (8th Cir. 1992).

A motion to dismiss under Rule 12(b)(1) can either attack the plaintiff's claim of jurisdiction based on the face of the complaint or its underlying factual basis. *See, e.g., Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial attack, "the court restricts

itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations omitted). In other words, the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). "In a factual attack, the court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729 n.6 (internal citations omitted).

### 1. Diversity

The parties lead with diversity, so the Court follows suit. Section 1332(a)(1) gives this Court "original jurisdiction of all civil actions" in which the amount in controversy exceeds $75,000 and the parties are "citizens of different States." "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). "For purposes of establishing diversity jurisdiction, 'a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.'" *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1104 (8th Cir. 2019) (quoting 28 U.S.C. § 1332(c)(1)).

The defendants, all of whom are Nebraska citizens, argue the Court does not have diversity jurisdiction because, in their view, the parties are not completely diverse. As the defendants see it, the Court should "presume" West Point has its principal place of business in Nebraska, and is thus a Nebraska citizen like the defendants, because West Point states in its complaint that it "is a corporation organized under the laws of South Dakota, which has a place of business located at 1805 Sycamore Street, West Point, Nebraska, 68788." The argument is unpersuasive. The defendants' proposed presumption—that West Point's principal place of business is in Nebraska—is at odds with the record.

The defendants ignore the distinction between a facial attack and a factual attack, but it is clear from their motion and briefs that they bring a facial attack.[2] In evaluating a facial attack, the Court can consider "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Carlsen*, 833 F.3d at 908 (quoting *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012)). West Point also gets the benefit of the Rule 12(b)(6) safeguards. *Id.*

Though not a model of clarity, West Point's complaint does provide enough information to establish diversity. The Purchase Agreement, which is attached as an exhibit to the complaint and referenced extensively throughout, states West Point is "a South Dakota corporation with its principal office of 4500 N. Cliff Avenue, Sioux Falls, South Dakota 57104." That statement—in conjunction with the defendants' Nebraska citizenship—fully supports West Point's jurisdictional allegation that "there is complete diversity" in this case. That West Point also states that it has *a* place of business in Nebraska does not raise any real doubt about the Court's jurisdiction to hear this case.

### 2. Federal Question

The defendants' facial challenge to West Point's assertion of federal-question jurisdiction fares no better.[3] Under § 1331, federal courts "have original jurisdiction of all civil actions arising under" federal law. "Federal question jurisdiction exists if the well-

---

[2] For example, they focus exclusively on the allegations in the complaint, incorporate the Rule 12(b)(6) safeguards, and adamantly urge the Court to disregard an affidavit from West Point's President evidencing West Point's principal place of business is in South Dakota because the affidavit is a matter outside the pleadings. To the extent the defendants raise a factual attack, the undisputed facts in that affidavit and the balance of the evidence in this case establish diversity jurisdiction.

[3] Of course, the Court realizes multiple bases for subject-matter jurisdiction are unnecessary. It nonetheless reaches this issue just in case the Eighth Circuit finds fault with the Court's conclusion on diversity. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Absent diversity of citizenship, federal-question jurisdiction is required.").

pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (quoting *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998)).

Here, West Point alleges in Count III that the defendants misappropriated trade secrets related to West Point's newly acquired "commercial truck service business" in violation of the DTSA—a federal statute that provides a private right of action. *See* 18 U.S.C. § 1836(b)(1) ("An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."). That statutory claim explicitly arises under federal law. *See, e.g.*, *Oglala Sioux Tribe v. C & W Enters., Inc.*, 487 F.3d 1129, 1131 (8th Cir. 2007) ("We will normally consider a claim to have arisen under federal law if a federal cause of action appears on the face a well-pleaded complaint.").

The Court rejects the defendants' unsupported suggestion that West Point's failure to more thoroughly describe how the allegedly misappropriated "trade secrets were related to products or services used in, or intended for use in, interstate or foreign commerce" deprives the Court of subject-matter jurisdiction over West Point's DTSA claim.

### B. Failure to State a Claim

In addition to their jurisdictional attacks under Rule 12(b)(1), the defendants move to dismiss West Point's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The [C]ourt accepts as true all factual allegations, but is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility'" and must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 556-57).

In their motion, the defendants move to dismiss all of West Point's claims for failure to state a claim. In their brief, they discuss only Counts I, II, and III. The Court finds they have abandoned their motion to dismiss Counts IV, V, VI, and VII for failure to state a claim and have waived any other issues cursorily raised in their motion but not discussed in their brief. *See* NECivR 7.1(a)(1)(A) ("A party's failure to brief an issue raised in a motion may be considered a waiver of that issue.").

### 1. Breach of Contract – Counts I and II

In Count I, West Point alleges the defendants breached several provisions in the Purchase Agreement, including, "without limitation, Sections 16 (Non-Disparagement) and 17 (Covenant Not to Compete, Non-Solicitation and Confidentiality)." In Count II, West Point alleges Lynn breached several provisions of the Employment Agreement, including "without limitation, Sections 6 (Non-Competition), 7 (Trade Secrets and

7

Confidential Information – Nondisclosure), 8 (Non[-S]olicitation) and 9 (Non-Solicitation of Employees), breach of loyalty and breach of fiduciary duty." Despite the breadth of those claims, the defendants argue West Point's contract claims should be dismissed in their entirety because the non-compete and non-solicitation provisions in those contracts "are unconscionable and unenforceable" as a matter of Nebraska law.[4]

The defendants fail to explain how the unenforceability of those two specific provisions warrants dismissing West Point's broader breach-of-contract claims in their entirety. But even as far as they go, the defendants' arguments fall short at this stage.

In Nebraska, partial restraints of trade, like non-compete and non-solicitation agreements, are not automatically invalid. *H&R Block Tax Servs., Inc. v. Circle A Enters., Inc.*, 693 N.W.2d 548, 553-54 (Neb. 2005); *Chambers-Dobson, Inc. v. Squier*, 472 N.W.2d 391, 401 (Neb. 1991) ("A noncompetition covenant is a valid means to protect an employer against postemployment unfair competition by an employee."). Enforceability turns on the fact-intensive question of whether the agreement is reasonable. *Id.*

To be valid and enforceable, a non-compete or non-solicitation agreement must be "(1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee." *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 748 N.W.2d 626, 638 (Neb. 2008). Where the agreement is not unreasonable on its face, Nebraska courts consider a broad range of factors, including "the degree of inequality in bargaining power; the risk of the covenantee losing customers; the extent of respective participation by the parties in securing and retaining customers; the good faith of the

---

[4]The parties appear to agree Nebraska substantive law applies to the state-law issues in this diversity case. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). That is consistent with the choice-of-law provisions in the Purchase Agreement and the Employment Agreement.

8

covenantee; the existence of sources or general knowledge pertaining to the identity of customers; the nature and extent of the business position held by the covenantor; the covenantor's training, health, education, and needs of his family; the current conditions of employment; the necessity of the covenantor changing his calling or residence; and the correspondence of the restraint with the need for protecting the legitimate interests of the covenantee." *Philip G. Johnson & Co. v. Salmen*, 317 N.W.2d 900, 904 (Neb. 1982).

"[C]ourts have generally been more willing to uphold promises to refrain from competition made in connection with sales of good will than those made in connection with contracts of employment." *CAE Vanguard, Inc. v. Newman*, 518 N.W.2d 652, 655 (Neb. 1994) (quoting *Restatement (Second) of Contracts* § 188, cmt. b. at 42 (1981)). "[A] covenant not to compete which is contained in a contract for sale of a business is a seller's self-imposed restraint from trade and is frequently necessary to make goodwill in the seller's business a transferable asset and ensure that the buyer receives the full value of acquired goodwill." *Chambers-Dobson*, 472 N.W.2d at 398. "The rationale behind the differential treatment is that in a sale of a business, '[i]t is almost intolerable that a person should be permitted to obtain money from another upon solemn agreement not to compete for a reasonable period within a restricted area, and then use the funds thus obtained to do the very thing the contract prohibits.'" *H&R Block*, 693 N.W.2d at 554 (alteration in original) (quoting *Swingle & Co. v. Reynolds*, 1 N.W.2d 307, 309 (Neb. 1941)).

A partial restraint of trade "ancillary to the sale of a business must be reasonable in both space and time so that it will be no greater than necessary to achieve its legitimate purpose." *Unlimited Opportunity, Inc. v. Waadah*, 861 N.W.2d 437, 443 (Neb. 2015). Determining whether such an agreement "is reasonable with respect to its duration and scope is dependent upon the facts of each particular case." *Id.* Indeed, "unless a provision is impermissibly vague or plainly overbroad," an effective enforceability analysis "often necessitates full development of the record." *Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 194 (D.D.C. 2015).

Given the fact-intensive nature of the enforceability inquiry under Nebraska law in these circumstances, and the paucity of the record at this early stage, the Court finds it unwise to resolve the parties' enforceability dispute on a motion to dismiss. *See*, *e.g.*, *C.H. Robinson Worldwide, Inc. v. Tu*, No. CV 19-1444 (MJD/BRT), 2020 WL 2733787, at *2 (D. Minn. May 26, 2020) ("The validity of a non-compete agreement depends on a factual analysis that is generally not appropriate for a Rule 12(c) motion."); *Base One*, 78 F. Supp. 3d at 194 (D.D.C. 2015) ("[A] determination of unenforceability upon a motion to dismiss will often be premature."); *Installed Bldg. Prod., LLC v. Cottrell*, No. 13-CV-1112-ASC, 2014 WL 3729369, at *1 (W.D.N.Y. July 25, 2014) (declining to conclude on a motion to dismiss that "a non-compete agreement is unenforceable as a matter of law" because the inquiry was fact-bound and the record was incomplete). In the employment context, the Nebraska Supreme Court has made it clear that a "non-compete" provision must be limited to non-solicitation of customers with whom the affected employee had personal contact and actually did business. *See Prof'l Bus. Servs. Co. v. Rosno*, 680 N.W.2d 176, 186 (2004). Nebraska courts will not reform or "blue pencil" a covenant that is unenforceable on its face. *Waadah*, 861 N.W.2d at 441. Standing alone, paragraphs 6(c) and 8 of the separate Employment Agreement are likely unenforceable as a matter of law. Not knowing the full extent and circumstances of any interplay between the non-compete provisions in the Employment Agreement and in the Purchase Agreement, dismissal at this time and on this record would not be proper.[5]

With respect to the defendants' assertion that "[e]ven if the noncompete and non-solicitation clauses are enforceable, [West Point has] failed to state a claim for breach of"

---

[5]This may be a non-issue. Any protection afforded under the Purchase Agreement (five years) extends to March 17, 2023. Any identical protections under the Employment Agreement would expire from the termination of Lynn's employment on April 5, 2019. That would extend the protection of the non-compete provisions of that agreement (even if enforceable) to April 4, 2021.

those clauses, the Court agrees that West Point's allegations leave ample room for improvement. But taking West Point's factual allegations as true and granting reasonable inferences in its favor, the Court finds West Point has alleged sufficient facts to "nudge" the challenged breach-of-contract "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 2.   Misappropriation of Trade Secrets under the DTSA – Count III

The Court reaches the same conclusion regarding the defendants' challenge to West Point's misappropriation claim under the DTSA. In Count III, West Point alleges the defendants misappropriated "certain confidential, proprietary, and trade secret information, including without limitation customer lists" in violation of the DTSA. Under the DTSA,

> the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if–
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Misappropriating a trade secret includes "disclosure or use of a trade secret" by someone who acquired knowledge of the trade secret "under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." *Id.* § 1839(5)(B)(ii).

In their response brief, which is again narrower than their motion, the defendants argue West Point fails to state a DTSA misappropriation claim because its "customer lists are not considered a trade secret." According to the defendants, the identities of West Point's customers are not protected because they are "readily ascertainable" from the Nebraska Department of Motor Vehicles and are "likely well known" because "West Point, Nebraska, is a small town of slightly over 3,000 people." The defendants further argue that if the Court decides West Point's "customer list is a trade secret," West Point's DTSA claim "must be dismissed because it fails to indicate how [West Point's] products or services were engaged in interstate commerce at the time of the misappropriation."

The defendants again miss the mark. First, the defendants acknowledge how broadly the DTSA defines trade secrets and concede that customer lists can—in certain circumstances—be trade secrets. *See*, *e.g.*, *VBS Distrib., Inc. v. Nutrivita Labs., Inc.*, 811 F. App'x 1005, 1008-09 (9th Cir. 2020) (unpublished); *Sterling Computers Corp. v. Haskell*, No. 4:17-CV-04073-KES, 2018 WL 671210, at *3 (D.S.D. Feb. 1, 2018). Yet the defendants try to dispose of West Point's DTSA claim before discovery based on inapposite state-law cases and facts that are not in the record. *See*, *e.g.*, *Indus. Packaging Supplies, Inc. v. Davidson*, No. CV 6:18-0651-TMC, 2018 WL 10456201, at *6 (D.S.C. June 22, 2018) (explaining that a plaintiff need not necessarily describe an alleged trade secret in great detail to survive a motion to dismiss because the exact nature of a trade secret is often a matter for discovery). "All that is required at this stage of the proceedings is an allegation that [the defendants] misappropriated [West Point's] trade secrets sufficient to put the defense on notice as to the nature of the claim." *Aggreko, LLC v. Barreto*, No. 1:16-CV-353, 2017 WL 963170, at *2 (D.N.D. Mar. 13, 2017). We have that.

Second, the DTSA only requires that a trade secret be "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836. The Court finds West Point's factual allegations—though thin—permit a reasonable inference that trade secrets related to West Point's truck-repair business (which ostensibly operates

12

in at least a 200-mile radius of West Point, Nebraska) meet that condition and give the defendants fair notice of the DTSA claim. Rule 8 requires no more.

## III. CONCLUSION

This Court has subject-matter jurisdiction over West Point's claims against the defendants. And the Court finds West Point has alleged sufficient facts, accepted as true, to plausibly state claims for breach of contract in Counts I and II and misappropriation of trade secrets in Count III. The Court further finds the defendants have abandoned their motion to dismiss Counts IV, V, VI, and VII and waived any other issues raised in their motion but not argued in their brief. *See* NECivR 7.1(a)(1)(A). Accordingly, the defendants' Motion to Dismiss (Filing No. 14) pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) is denied.

IT IS SO ORDERED.

Dated this 15th day of September 2020.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge